more than a water privilege, and the defendant is consequently forced into the position of claiming that such a grant must be so construed as to convey by implication the right to discharge the water in whatever manner will prove most beneficial to the enjoyment of the right granted.

We think that the mere statement of this proposition exposes its fallacy, and we therefore proceed to a brief consideration of the single question involved in this controversy, which is whether or not the defendant has acquired a prescriptive right to discharge the waters from its tail race upon the premises of the plaintiffs, to their annoyance and injury. It is, of course, a familiar rule that a user of real estate which is in the nature of an easement ripens into an absolute right only by an adverse, continuous, and uninterrupted enjoyment thereof for a period of 20 years (Prentice v. Geiger, supra); and, moreover, that such enjoyment or user must be without substantial change for the same length of time. As was held in an early case, where this subject was under consideration:

"The erection of a milldam on one's own land, and flowing a neighbor's land for more than twenty years uninterruptedly, bars all right of action in the neighbor, but only for the dam as it stood. If it be raised and the flow increased within twenty years, an action lies." Russell v. Scott, 9 Cow. 279.

And this doctrine has been too often reiterated by the courts of this state, and is now too firmly established, to require the citation of any authorities in its support.

It would seem, therefore, that, before the value of this contention upon the part of the defendant can be determined, reference must once more be had to the established facts of the case. As has already been stated, it was found by the trial court, upon evidence which was ample to support the finding, that the water discharged by the defendant upon the plaintiffs' premises was materially increased in quantity and velocity by the introduction of the Rodney-Hunt wheel and the siphon in the year 1887 or 1888; and this fact, within the rule to which we have adverted, necessarily disposes of the defendant's claim that the act complained of does not constitute an invasion of the plaintiffs' rights, but is simply an enjoyment of a right which the defendant has acquired by prescription. We are led, therefore, to the conclusion that the judgment appealed from should be affirmed. Judgment affirmed, with costs. All concur.

---

(19 App. Div. 247.)

### PEOPLE v. NATIONAL MUT. INS. CO.

(Supreme Court, Appellate Division, First Department. June 25, 1897.)

1. EXECUTION—LEVY—EFFECTIVENESS.

The attorney for the plaintiff in a judgment delivered to the sheriff, with the execution, a letter saying that the sheriff was authorized, after making the formal levy on the defendant's property, to permit the same to remain in the possession of a certain officer of the defendant corporation, as the sheriff's custodian, taking his receipt therefor. *Held*, that such letter, though it might relieve the sheriff from liability for the default of such custodian, did not deprive the levy of effect, nor show an intention that the writ should not be executed.

**2. SAME—PROPERTY SUBJECT—NOTES.**

Although a promissory note cannot be levied on under an execution, against the objection of the judgment debtor, yet if the debtor, when the execution is presented to him, turns over to the sheriff a promissory note, with the intention that it should be held subject to the execution, the sheriff may hold it, and insist upon his lien upon it, especially if such note is accompanied by shares of stock as collateral.

**3. RECEIVERS—CONTRACTS—VALIDITY.**

At the time of the appointment of a receiver of a corporation, a part of its property had been levied on under an execution, and left with an officer of the corporation, as custodian for the sheriff. The receiver made an agreement with such officer that he would take possession of the property levied on, sell it, and apply so much of the proceeds as should be necessary to the payment of the judgment under which the execution was issued. *Held* that, although the agreement was one which technically should not have been made without the leave of the court, yet, as it was a proper one, it should be enforced.

Appeal from judgment on report of referee.

Proceeding by the people against the National Mutual Insurance Company, in which Anna E. Elmore moved for the allowance of her claim. The motion was denied, and claimant appeals. Reversed.

Argued before VAN BRUNT, P. J., and RUMSEY, WILLIAMS, INGRAHAM, and PARKER, JJ.

Charles S. Foote, for appellant.

Hamilton R. Squier, for respondent.

RUMSEY, J. The facts show that Mrs. Elmore was a judgment creditor of the National Mutual Insurance Company, and that on the 10th day of May, 1894, an execution upon her judgment was issued against that company to the sheriff of the county of New York. On that day the deputy sheriff holding the execution went to the office of the company, where he saw William G. Lord, the secretary. He produced his execution, and Mr. Lord turned out to him certain property of the company that he might levy upon it. This property consisted of office furniture in the office of the company, and a promissory note for $2,500, made by one Rogers, secured by certificates for 25 shares of stock of the corporation, of a value considerably greater than the face of the note. All this property, including the certificates of stock, was taken by the sheriff into his actual possession, and was then delivered to Mr. Lord as custodian, and a receipt was given by him in the usual form, reciting that he held the property as custodian for the sheriff of New York county. On the same day—but at what hour does not appear—an order was made appointing D. Edgar Anthony receiver of the property and effects of the corporation. It is to be assumed from the papers that Mr. Anthony qualified as receiver, but precisely when this was done does not appear. It has not been made to appear whether the receiver was appointed before the levy was made; and, in the absence of any proof upon the subject, there is no reason to say that the lien of the levy was not prior to the right of the receiver, which became perfected by the filing of his bond, and, when perfected, related to the date of his appointment. After the appointment of the receiver, the property which Lord had received as custodian from the sheriff was delivered to him, with other property of

the corporation, upon an arrangement made between Anthony and Lord that Anthony would cause the property to be sold, and would pay the amount of Mrs. Elmore's lien out of the proceeds of the property, turning the remainder, if any, into the general funds of the company which he held as receiver. After the property had been sold, Anthony was removed as receiver, and the present respondent substituted, who received the proceeds of the sale of the property which had been levied upon. Those proceeds were considerably more than sufficient to pay the claimant's judgment and the sheriff's fees. A demand was made of the new receiver to pay the money to the plaintiff, which he refused to do, and thereupon this motion was made to require him to do so. The motion was denied, and Mrs. Elmore takes this appeal.

The facts above recited are substantially found by the referee to whom the motion was sent to report the facts with his opinion thereon. The conclusions of law of the referee that Mrs. Elmore was not entitled to the payment of the amount of her judgment are based upon certain facts which have not yet been referred to. Those facts are that before the levy was made the plaintiff's attorney in the execution delivered to the sheriff a letter, which said, in effect, that the sheriff was authorized, after making the formal levy upon the property of the company, to permit the same to remain in the possession of William G. Lord, as his custodian, taking a receipt from him for the property levied upon under the execution, and to permit the same so to remain until further direction from the plaintiff's attorney, who signed the letter. The referee held that the legal result of this letter was to deprive the levy of any effect to bind the goods of the judgment debtor. This finding was based upon the idea that the duty of the sheriff, after receiving the letter, was to proceed no further with the execution; and that, being bound to follow the instructions of the plaintiff's attorney, he had no power to do anything more than to permit the property to remain in the custody of Mr. Lord, without taking any steps to reduce it to money, and devote it to the payment of the execution. We do not think that any such effect should be given to that letter. The sheriff had the right to leave the property in the hands of any person whom he might select as custodian. If, because of the fault of the person so selected, the property was lost, and the judgment creditor could not realize the value of it, the sheriff would be liable, because the custody of the custodian was his custody, and he was bound to keep the property safely, so that it might be devoted to the satisfaction of the execution in the legal way. The letter which authorized the sheriff to select a particular person as custodian would probably have had the effect to relieve him from liability if the property had been lost because of the negligence of that particular custodian. But it would not have any other effect, unless by a reasonable construction of the letter it can be said that the sheriff was directed to do nothing more with the property than to leave it in the custody where he had placed it. An examination of the letter shows that the sheriff was not directed to do anything. He received no instructions which should govern his action in regard to this property which he had levied upon. There was nothing in the letter which even required him to

leave it in the custody of Mr. Lord; nor was there anything in it which required him to postpone the sale of it, or even left him at liberty to postpone such sale. The letter must be read in connection with the execution which had been delivered to the sheriff. That execution required him to make the amount of the judgment out of the property upon which he levied, and the letter permitted him to leave the property which he levied upon in the possession of the custodian, and until further directions should be given by the plaintiff's attorney; the plain meaning being that the property might be left in the custody of that person so long as it was to be left in the custody of anybody, and until, pursuant to the command of the execution, it became the duty of the sheriff to make other disposition of it, unless directions should be given by the attorney in the execution to take it out of the custody of that person. The letter cannot be said to require the sheriff to sell, or to forbid him from selling, the property, according to the directions of his writ. Much less can it be said to show an intention on the part of the judgment creditor that the writ should not be executed. The case is not at all like that of Robertson v. Lawton, 91 Hun, 67, 36 N. Y. Supp. 175, even if that case was well decided,— which we are not prepared to admit.

It is suggested that the sheriff acquired no lien by his levy upon the promissory note, because a promissory note is not a subject of levy upon execution. Undoubtedly, a chose in action of that nature cannot be levied upon by virtue of an execution, against the objection of the judgment debtor. Ingalls v. Lord, 1 Cow. 240. If that were all there was of the case, no lien could be acquired by this act of the deputy sheriff. But, while the judgment debtor holding the promissory note is undoubtedly at liberty to say that such a note cannot be levied upon by virtue of an execution against his property, yet if, when the execution is presented to him, he turns over to the sheriff the promissory note, with the intention that the latter should hold it subject to the execution, there is no reason why he should afterwards be permitted to say that the sheriff did not acquire the right to hold that property precisely as he would hold any other property. There is nothing in the nature of this particular property which renders it improper that it should be taken into the custody of the sheriff with the consent of the judgment debtor. The statute authorizes a levy upon any chose in action made by a corporation, municipal or otherwise, or by a public officer, which is in terms negotiable, or payable to the bearer or holder. Code Civ. Proc. § 1411. It is quite true that that section does not include promissory notes made by private persons; but there is no real distinction between the two kinds of property, and no reason why, if such a note as this should be turned over to the sheriff, he should not be permitted to hold it and insist upon his lien upon it. But in this case, in addition to the promissory note, the secretary of the company turned out to the sheriff the shares of stock. So far as they belonged to this company, they were clearly leviable, and the sheriff was authorized to sell the interest of the company; and if the actual owner of the stock, who pledged them as security, found no fault with it, we can see no reason why the sheriff might not properly hold them as against anybody else. We con-

·clude, therefore, that the sheriff acquired, by the act of the secretary of the company, a valid lien upon the property, which was turned out to him to apply upon this execution. It is said, however, that the receiver had no authority to make the contract into which he afterwards entered, that he would take possession of this property with the other property of the company, and, having sold it, or collected the money upon it, would devote so much of that money as was necessary to the payment of Mrs. Elmore's claim. It may be that the receiver, before making such a contract, should have asked the permission of the court. But, if the receiver had refused to make such an arrangement, it is quite clear that he could not have gotten possession of this property without a direction of the court that it be turned over to him. It is equally clear that upon the facts here shown the court would only turn the property over upon the condition that the lien of the plaintiff in the execution should be protected. This lien was superior to the right of the receiver. He took the property charged with that lien. The agreement that he made was, therefore, one which the court would have made; and while technically, perhaps, he should not have made it without permission of the court, yet, as he was enabled by it to get possession of this property, and to save for the company the amount which he collected over the amount which the plaintiff was entitled to receive out of it, the agreement he made is one which ought to be enforced. We see no reason why it should not be enforced. It was made to appear in the case that this note was a part of the reserve fund of the company, but there is nothing to show for what purposes the reserve fund was established, and certainly, in the absence of proof, there can be no presumption that any particular fund of a corporation is exempt from the claims of its creditors.

For these reasons, we think the appellant should have been permitted to receive the amount due upon her judgment out of the money collected by the receiver upon this property which was turned over to Mr. Lord by the sheriff. The order, therefore, denying her motion must be reversed, with $10 costs and disbursements, and the motion granted, with $10 costs and disbursements of the reference. All concur.